## SLATER v. BRIGHT.

Court of Appeals of Kentucky.

May 9, 1952.

Allen Schmitt, Louisville, J. Ballard Clark, LaGrange, for appellant.

Bernard B. Davis, Shelbyville, for appellee.

CULLEN, Commissioner.

This appeal involves the question of whether one corporation, in paying the debts of another, pursuant to an informal agreement participated in by some of the stockholders and officers of both corporations, is precluded, as a volunteer, from asserting a claim against the debtor corporation for the amount paid.

On March 31, 1948, the U. S. 60 Wood Manufacturing Company was incorporated for the purpose of manufacturing hardwood flooring and other items incident to woodworking. The company had an authorized capital of $40,000, with four subscribers, C. H. Fleming, George P. Gray, W. G. Slater and Paul G. Bartlett, each of whom subscribed to 100 shares at $100 per share, but did not pay their subscriptions in full. As a matter of fact, Slater did not pay any part of his subscription, but he did advance money to the corporation for the payment of labor bills.

In the summer of 1948, after constructing a small building, and acquiring some machinery and lumber, and having incurred a substantial indebtedness, the company closed down for lack of funds, without ever having its plant in operation.

On September 8, 1948, the Bartlett Corporation was incorporated by Paul Bartlett, Jack Langley and R. L. Pritchard. The purpose of the Bartlett Corporation was to manufacture, buy and sell mining equipment, hardwood flooring, doors and woodwork, and to do any other business incident thereto. Immediately after incorporating, the Bartlett Corporation came into possession of the real estate, supplies and equipment of the U. S. 60 Company and started the manufacture of mining equipment. It appears that the Bartlett Corporation merely "took over" the property and machinery of the U. S. 60 Company, without any formal transfer of assets.

The Bartlett Corporation paid debts of the U. S. 60 Company totaling $5,223, again without any formal agreement between the two corporations. There was no official action on the part of either company, nor was there any writing between the officers of the two companies, nor were there any notes or mortgages given to secure reimbursement.

The Bartlett Corporation fell into financial difficulty, and on May 20, 1949, J. B. Bright was appointed receiver for both corporations. The assets of the U. S. 60 Company then were segregated from those of the Bartlett Corporation, and upon their being sold by the receiver the proceeds were properly credited to the respective corporations.

In the receivership proceedings creditors of both Corporations filed claims; Bright as receiver for the Bartlett Corporation filed a claim against the U. S. 60 Company for the amount of the latter's debts paid by the Bartlett Corporation; and Bright as receiver for the U. S. 60 Company sought to recover from Slater and the other stockholders of U. S. 60 the amount remaining unpaid on their stock subscriptions. As the case was developed the issues between Slater and the receiver narrowed down to the question of whether the claim by the Bartlett Corporation, against the U. S. 60 Company, should be taken into consideration in fixing Slater's liability on his stock subscription.

The chancellor decided that the Bartlett Corporation had a claim against the U. S.

60 Company for the sum paid on the latter's debts, and included this sum in the total of liabilities of the U. S. 60 Company in determining the amount for which judgment was entered against Slater on his stock subscription.

Slater, as appellant, contends that the Bartlett Corporation acted purely as a volunteer in paying U. S. 60's debts; that such action in any event was ultra vires and was never ratified; and that he was personally uninformed of the entire transactions between the corporations.

The receiver, as appellee, contends that the Bartlett Corporation was not a mere volunteer; that there was an implied agreement that the Bartlett Corporation would pay U. S. 60's debts, and appellant is estopped to deny it by his acquiescence therein; that principles of equity require the Bartlett Corporation creditors be protected before appellant.

■ Throughout the very nebulous record runs the thread of a nonchalant informality in the conduct of the affairs of the two corporations. Apparently all involved acted almost exclusively as individuals in transacting the various phases of business and never considered the corporations as entities. Meetings were not held regularly and minutes were rarely kept so that there is no reliable record as to what actually transpired regarding the payment of $5,-223 by the Bartlett Corporation, on the indebtedness of U. S. 60. Therefore, in the light of past activities by the officers and stockholders of the corporations, the question of whether the Bartlett Corporation acted purely as a volunteer must be decided, not by adherence to strict formality, but by the nature and effect of all agreements, actual or implied, which can be deduced from the conduct of the parties.

■ From the record it appears that C. H. Fleming, president of U. S. 60, was aware that the Bartlett Corporation had taken over the physical plant of U. S. 60 and was paying debts of the latter. R. L. Pritchard, who had acquired the stock of George P. Gray in U. S. 60 and therefore was a stockholder in both corporations,

had knowledge of the payment of the debts by the Bartlett Corporation. This is evidenced by the fact that Pritchard signed all checks as secretary-treasurer of the Bartlett Corporation for the payment of the U. S. 60 debts. Actually only the appellant Slater denies knowledge of the payments by the Bartlett Corporation. This claim by Slater is refuted, not only by the testimony of Fleming but by Slater's own conduct when, in seeking to settle a claim he had against U. S. 60, he had notes prepared for signature by Pritchard and Langley. Though it cannot be established that the U. S. 60 Company officially requested that the Bartlett Corporation pay a portion of its debts, it would be unrealistic to hold that no form of agreement or understanding existed between the two corporations when one considers the more or less interlocking relationship of the stockholders and officers, as set out above. At the very least there was something more than acquiescence on the part of Fleming and Pritchard. Fleming, as president of U. S. 60, Paul Bartlett as active manager and operator, and Pritchard as owner of one-fourth of the stock, represented three-fourths of the U. S. 60 stock. Bartlett and Pritchard represented two-thirds of the Bartlett Corporation stock. Under these circumstances, with more than a majority of the stockholders of both corporations participating in the informal agreement or understanding pursuant to which the Bartlett Corporation paid the debts owed by the U. S. 60 Company, we think the lower court properly refused to classify the Bartlett Corporation as a mere volunteer.

■ The rule which precludes a volunteer from recovering money paid by him upon the debts of another is a somewhat harsh rule, and it should not be so applied as to enable a debtor to reap an advantage at the expense of innocent third parties. In the case before us, the claim of the Bartlett Corporation is being advanced on behalf of the creditors of that corporation. To adopt Slater's argument, that the Bartlett Corporation acted as a volunteer and, therefore, should not be considered a creditor of the U. S. 60 Cor

poration, would be to deprive the innocent creditors of the Bartlett Corporation of $5,223, and decrease Slater's corporate liability proportionately. To uphold Slater's position would be most inequitable, for it would permit him to profit at the expense of the Bartlett creditors.

Slater makes some contention that the transaction pursuant to which the debts of U. S. 60 were paid by the Bartlett Corporation was "ultra vires," but does not support this contention with any explanation or citation of authorities.

The judgment is affirmed.